UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:11-cr-0249 DAD DB P |
|---|---|
| Respondent, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ALONZO JACKSON BROWN III, | |
| Movant. | |

Movant is a former federal prisoner proceeding pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Movant argues the court improperly participated in plea negotiations, he was coerced into pleading guilty, and he received ineffective assistance of counsel. Presently before the court is movant's his amended motion to vacate, set aside, or correct his sentence (ECF No. 47), the government's motion to dismiss (ECF No. 56), movant's opposition to the motion to dismiss (ECF No. 58), the government's supplemental response (ECF No. 70), and the government's post-hearing supplemental brief (ECF No. 102). For the reasons set forth below the court will recommend that movant's amended motion to vacate, set aside, or correct his sentence be denied.

////

////

////

# FACTS AND PROCEDURAL BACKGROUND

## I. Prior Proceedings

This case was initiated when a criminal complaint was filed on May 23, 2011. (ECF No. 1.) Thereafter, a grand jury indicted movant on nine counts of wire fraud in violation of 18 U.S.C. § 1343. (ECF No. 10.) Movant plead guilty to counts 1 and 7 of the indictment on June 7, 2012. He was sentenced to 63 months in prison and 36 months of supervised release. (ECF No. 29.)

The court dismissed movant's first motion to vacate, set aside, or correct the sentence pursuant to 28 U.S.C. § 2255 (ECF No. 36) because it was not signed and directed movant to file a signed, amended motion within 30 days. (ECF No. 42.) Thereafter, movant filed the instant § 2255 motion. (ECF No. 47.) The magistrate judge then assigned to the case directed the government to file a response. (ECF No. 48.) The government filed a motion to dismiss and request for discovery. (ECF No. 56.) Movant filed an opposition to the motion to dismiss. (ECF No. 58.) The government's motion for discovery was granted in part (ECF No. 66), and the government filed a supplemental response to movant's motion to vacate and along with a request to seal. (ECF Nos. 70, 71.)

By order dated November 17, 2022, the undersigned granted the parties' request for an evidentiary hearing on movant's allegation that trial counsel was ineffective for failing to file an appeal. (ECF No. 73.) An evidentiary hearing was held on August 9, 2022. (ECF No. 99.)

## II. Motion to Vacate

Movant argued that the district court participated in the plea process in violation of Federal Rule of Criminal Procedure 11, he was coerced into pleading guilty, and his trial counsel, Donald H. Heller ("Mr. Heller"), rendered ineffective assistance of counsel in violation of his rights under the Fifth Amendment. (ECF No. 47 at 4-5, 15-29.) Movant requested an evidentiary hearing to resolve the issues raised in his motion.

## III. The Government's Opposition

The government argued that movant's waiver of his right to appeal should be considered valid, the record establishes that the trial court did not violate Rule 11, and movant failed to allege

sufficient facts to establish his counsel was ineffective. (ECF No. 56 at 6.) In the supplemental response, the government requested an evidentiary hearing to resolve the disputed factual issues related to trial counsel's failure to file a notice of appeal. (ECF No. 70.)

## LEGAL STANDARDS

### I. Motions Pursuant to 28 U.S.C. § 2255

A federal prisoner making a collateral attack against the validity of their conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed the sentence. United States v. Monreal, 301 F.3d 1127, 1130 (9th Cir. 2002). Under § 2255, the sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. Davis v. United States, 417 U.S. 333, 344-45 (1974); United States v. Barron, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("We hold now that Brecht's harmless error standard applies to habeas cases under section 2255, just as it does to those under section 2254."). Relief is warranted only where a petitioner has shown "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346 (citation and quotation omitted); see also United States v. Gianelli, 543 F.3d 1178, 1184 (9th Cir. 2008). Mere conclusory assertions in a § 2255 motion are insufficient, without more, to require the court to hold a hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

### II. Violation of Federal Rule of Criminal Procedure Rule 11

Federal Rule of Criminal Procedure 11 provides that counsel for the defense and the government may discuss and reach a plea agreement. Fed. R. Crim. P. 11(c)(1). The district court is prohibited from participation in plea negotiations. Fed. R. Crim. P. 11(c)(1). "Given the 'unequal positions' between the judge and the accused, any degree of judicial involvement in plea negotiations raises 'question[s] of fundamental fairness.'" United States v. King, 985 F.3d 702, 712 (9th Cir. 2021) (quoting United States v. Bruce, 976 F.2d 552, 557 (9th Cir. 1992)).

"Rule 11(c)(1) prevents defendants from being coerced to plead guilty, protects the integrity of the judicial process, and preserves the court's impartiality." King, 985 F.3d at 712 (9th Cir. 2021) (citing United States v. Kyle, 734 F.3d 956, 963 (9th Cir. 2013). see also United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir. 2007) ("Rule 11 is designed to totally eliminate judicial pressure from the plea bargaining process.") (quotation omitted).

### III. Ineffective Assistance of Counsel

To succeed on a claim of ineffective assistance of counsel, a petitioner must show (1) that his counsel's performance was deficient and (2) that the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

#### A. Deficient Performance

Counsel is constitutionally deficient if their representation "fell below an objective standard of reasonableness" such that it was outside "the range of competence demanded of attorneys in criminal cases." Strickland, 466 U.S. at 687-88 (internal quotation marks omitted). "Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

A reviewing court is required to make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 669; see also Richter, 562 U.S. at 107. Reviewing courts must also "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. This presumption of reasonableness means that the court must "give the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of possible reasons [defense] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 195 (2011) (internal quotation marks and alterations omitted).

A defense attorney has a general duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. at 691. A claim of negligence in conducting pretrial investigation can form the basis for a claim of

ineffective assistance. See United States v. Tucker, 716 F.2d 576, 581 (9th Cir. 1983); Hines v. Enomoto, 658 F.2d 667, 676 (9th Cir. 1981), overruled on other grounds by Ross v. Oklahoma, 487 U.S. 81 (1988). Counsel must, at a minimum, conduct a reasonable investigation enabling them to make informed decisions about how best to represent their client. See Sanders v. Ratelle, 21 F.3d 1446, 1457 (9th Cir. 1994). Where the decision not to investigate further is taken because of reasonable tactical evaluations, the attorney's performance is not constitutionally deficient. See Siripongs v. Calderon, 133 F.3d 732, 734 (9th Cir. 1998). If counsel reviews the preliminary facts of the case and reasonably decides to pursue only one of two conflicting defense theories, for example, they need not investigate the abandoned defense theory further. See Turk v. White, 116 F.3d 1264, 1267 (9th Cir. 1997); Bean v. Calderon, 163 F.3d 1073, 1082 (9th Cir. 1998).

Thus, strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. See Cacoperdo v. Demosthenes, 37 F.3d 504, 508 (9th Cir. 1994) (decision whether to introduce medical evidence largely question of professional judgment). That said, the label of "trial strategy" does not automatically immunize an attorney's performance from Sixth Amendment challenges. See United States v. Span, 75 F.3d 1383, 1389-90 (9th Cir. 1996).

**B. Prejudice**

The second part of the Strickland test requires a movant to show that counsel's conduct prejudiced him. Strickland, 466 U.S. at 691-92. Prejudice is found when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is one "'sufficient to undermine confidence in the outcome.'" Summerlin v. Schriro, 427 F.3d 623, 640 (9th Cir. 2005) (quoting Strickland, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between Strickland's prejudice standard and a more-probable-that-not standard is slight and matters 'only in the rarest case.'" Richter, 562 U.S. at 112 (quoting Strickland, 466 U.S. at 693). "The likelihood of a different result must be substantial, not just conceivable." Id.

5

In evaluating prejudice, the court must "compare the evidence that actually was presented to the jury with the evidence that might have been presented had counsel acted differently," Bonin v. Calderon, 59 F.3d 815, 834 (9th Cir. 1995), and evaluate whether the difference between what was presented and what could have been presented is sufficient to "undermine confidence in the outcome" of the proceeding, Strickland, 466 U.S. at 694.  Prejudice is established if "there is a reasonable probability that at least on juror would have struck a different balance" between guilty and not guilty.  Wiggins v. Smith, 539 U.S. 510, 537 (2003).

When determining whether a movant has been prejudiced, the court considers the cumulative effect of counsel's errors.  See Harris v. Wood, 64 F.3d 1432, 1438-39 (9th Cir. 1995) (finding cumulative prejudice from counsel's performance that was "deficient in eleven ways, eight of them undisputed" which "obviates the need to analyze the individual prejudicial effect of each deficiency," but noting that "some of the deficiencies [may be] individually prejudicial"); see also Montana v. Egelhoff, 518 U.S. 37, 53 (1996) (The combined effect of multiple errors at trial violates due process where it renders the trial fundamentally unfair. (citing Chambers v. Mississippi, 410 U.S. 284 (1973).); Taylor v. Kentucky, 436 U.S. 478, 487 n.15 (1978).  The Ninth Circuit has described the standard for evaluating cumulative error on habeas as "determining whether the combined effect of multiple errors rendered a criminal defense 'far less persuasive' and had a 'substantial and injurious effect or influence' on the jury's verdict."  Parle v. Runnels, 505 F.3d 922, 928 (9th Cir. 2007) (quoting Strickland, 466 U.S. at 696).

## ANALYSIS

### I.   Involuntary Guilty Plea and Rule 11 Violation

Movant argues that his guilty plea was involuntary.  (ECF No. 47 at 21-25.)

The government argues that the plea agreement "unambiguously bars collateral attack on any aspect" of movant's conviction or sentence.  (ECF No. 56 at 9.)  Under the terms of the agreement, movant agreed not to file a § 2255 motion attacking his conviction or sentence.  (ECF No. 56 at 9-10; ECF No. 23 at 10.)  Thus, the government argues, the court should dismiss movant's claim as it relates to the alleged Rule 11 violation.  (ECF No. 56 at 10.)  The

////

1  government further argues that both the plea agreement signed by movant and the Rule 11
2  colloquy show that movant's waiver was knowing and voluntary. (ECF No. 56 at 10.)
3     "A defendant's waiver of his rights to appeal and to bring a collateral attack is generally
4  enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised,
5  and (2) the waiver is knowingly and voluntarily made.'" Davies v. Benov, 856 F.3d 1243, 1246
6  (9th Cir. 2017) (quoting United States v. Jeronimo, 398 F.3d 1149, 1153 (9th Cir. 2017)). It is
7  defendant's burden to show that the plea agreement was not knowing and voluntary. United
8  States v. Michlin, 34 F.3d 896, 900 (9th Cir. 1994). The only claims that cannot be waived are
9  claims that the waiver itself was involuntary or that ineffective assistance of counsel rendered the
10 waiver involuntary. Washington v. Lampert, 422 F.3d 864, 870-71 (9th Cir. 2005), cert. denied,
11 54 U.S. 1074 (2006); see also United States v. Chan, 721 Fed. Appx. 728 (9th Cir. 2018) ("A
12 waiver of a defendant's right to appeal or collaterally attack a conviction does not preclude a
13 subsequent claim of ineffective assistance of counsel in which the defendant calls into question
14 his entry into the agreement that contained the waiver." (citing Washington, 422 F.3d at 869-70)).
15    Because movant argues that the waiver was not voluntary and that he received ineffective
16 assistance of counsel, the court will review the merits of his claim.
17          **A. The Parties' Arguments re Rule 11 Violation**
18    Movant claims the court violated his rights by participating in the plea negotiations. (ECF
19 No. 47 at 16.) He cites the transcript of the June 7, 2012, trial confirmation hearing to support his
20 argument that he asked to go to trial but was thwarted by the court. (Id. at 17-23.)
21    The government argues that the trial court did not violate Rule 11 during the June 7, 2012,
22 hearing because movant was given every opportunity to go to trial. (ECF No. 56 at 11.) The
23 government claims that the trial court "did not thwart" movant's desire to go to trial. (ECF No.
24 56 at 12.) Rather, the government claims, the hearing transcript indicates that the district court
25 confirmed a trial date before movant indicated he would rather change his plea. (Id.)
26          **B. Summary of June 7, 2012, Hearing**
27    On June 7, 2012, the court held a trial confirmation hearing. (ECF No. 20.) Movant's
28 trial counsel, Mr. Heller, indicated that he was ready to proceed to trial, but movant wished to

7

1  continue the matter. (ECF No. 45 at 3.) The court indicated that, it did not have availability to
2  grant a continuance. (Id.) The court further indicated that movant would need to decide between
3  pleading guilty or proceeding to trial. (Id. at 3-4.) The court made clear that it was movant's
4  choice, but that he must make a decision. (Id. at 4.)

5        Thereafter, the attorney representing the government stated that a plea offer was conveyed
6  to the defense, Mr. Heller went over the plea agreement with movant, and movant indicated he
7  understood the terms of plea agreement. (Id. at 4-5.) Counsel stated that movant rejected the plea
8  offer and indicated he wished to proceed to trial. (Id. at 5.)

9        After movant indicated he wanted to speak to his attorney, the court paused the
10  proceedings to allow movant time to speak with Mr. Heller. (Id. at 5-6.) The court stressed that
11  movant's request for a continuance was being denied because of the status of the court's criminal
12  docket did not allow for any further delay. (Id. at 6.)

13        At that point Mr. Heller indicated that he had just learned about six witnesses for the first
14  time, and that movant was attempting to get restitution paid before sentencing. (Id. at 6-8.) The
15  court reiterated that if movant decided to plead guilty, it would be an open plea because the
16  government's plea offer had expired. (Id. at 8.) The court paused the proceedings again to allow
17  Mr. Heller to discuss with movant the difference between an open plea and a plea agreement.
18  (Id.)

19        Mr. Heller informed the court that movant wanted to ask a question because he was
20  having trouble making a decision. (Id. at 10.) Movant asked for a week to try to make a decision.
21  (Id. at 10-11.) The court asked Mr. Heller how long he had been practicing law. (Id. at 11.) Mr.
22  Heller stated he had been practicing for "42 and a half-years" and had "tried well in excess of 200
23  cases." (Id.) The court told movant that Mr. Heller was "one of the most experienced and well-
24  respected attorneys . . . in not just Northern California, but California, maybe even the United
25  States." (Id.) The court further stated that movant should give Mr. Heller's advice great weight.

26        The court then stated that the request to continue the matter was denied, any other request
27  would be denied, and because movant had decided not to enter a plea, the court would confirm
28  ////

8

1    the case for trial.  (Id. at 12.)  As the court stated that a jury trial would begin on July 9, 2012, at

2    9:00 a.m., Mr. Heller interjected that movant just told him he would like to take a plea.  (Id.)

3         Mr. Heller asked if the government would extend the previously expired plea agreement.

4    (Id. at 13.)  The court expressed concern about the potential of a post-conviction argument being

5    raised that movant was forced to enter a plea.  (Id.)  The government reiterated that the plea offer

6    was expired.  However, the government offered to extend the plea agreement.

7         Mr. Heller stated that he did not believe the court was being coercive because the court

8    had merely reiterated what Mr. Heller had already communicated to movant.  (Id. at 14.)  Mr.

9    Heller stated that he was prepared to recommend the plea agreement, that if he proceeded to trial,

10   he could receive a higher sentence, and that movant's payment of restitution would not have an

11   effect on the underlying charges.  (Id. at 15.)  Thereafter, the court asked movant whether he

12   wanted to plead guilty.  Movant confirmed his decision to plead guilty and confirmed he signed

13   the plea agreement including his signature at the end of the factual basis.  (Id. at 16.)

14        The court administered the oath, advised movant that if he did not understand the

15   questions or wished to speak to Mr. Heller during the plea colloquy, he could have time to speak

16   with him.  (Id. at 18.)  The court put the terms of the plea agreement on the record.  (Id. at 18-28.)

17        **C. Analysis**

18        In reviewing a Rule 11 motion, "particular facts and circumstances [. . .] should be

19   assessed, not in isolation, but in light of the full record."  United States v. Davila, 569 U.S. 597,

20   611-12 (2013).  The relevant question, after examining the entire record, is whether it was

21   reasonably probable that, but for the judge's involvement, the defendant would have exercised his

22   right to a jury trial.  Id.

23        Review of the record indicates that court informed movant his request to continue the

24   matter would be denied and he would need to enter a plea or indicate his willingness to proceed to

25   trial. (ECF No. 45 at 12-13.)  The court then stated that because movant had not indicated that he

26   would take a plea, it would set the matter for trial, to commence approximately one month from

27   the hearing date.  (Id. at 12.)

28   ////

9

"Rule 11(c)(1) is not violated by a judge's comments made while implementing or planning docket or case-management decisions." United States v. Cano-Varela, 497 F.3d 1122, 1132 (10th Cir. 2007). "[A]ll federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively." United States v. W.R. Grace, 526 F.3d 499, 509 (9th Cir. 2008)) (citations and quotations omitted).

In United States v. King, the Ninth Circuit held that no Rule 11 violation occurred where the defendant "confirmed that he went through the plea agreement with his attorney, that he had all of his questions answered, and that he understood he was giving up his right to appeal except for the motion to suppress. The district court also ensured that [defendant] wasn't threatened or forced into pleading guilty or offered any other promises in exchange for his plea." 985 F.3d 702, 711 (9th Cir. 2021).

Similarly, here the district court confirmed that movant reviewed the plea agreement with his attorney, reiterated that the plea colloquy could be paused if movant had questions for his attorney, and stated multiple times that it was movant's choice to take a plea or proceed to trial. (ECF No. 45.) The trial court made clear that it would not grant a continuance for the purpose of allowing movant additional time to decide whether to enter a plea or proceed to trial because of the court's unavailability. (ECF No. 45 at 3.) However, the court stressed that movant was free to choose either option. (Id. at 4.) "There is nothing inherently coercive about requiring a defendant to make *a* decision-either plead guilty or go to trial, so refusing to give a defendant more time to mull his options simply does not fall within the purview of the rule." Cano-Varela, 497 F.3d at 1133 (internal citations and quotations omitted).

The Ninth Circuit has found Rule 11 violations where the court encourages a defendant to plead guilty, commits itself to a particular sentence, or requires a certain plea term. King, 985 F.3d at 712 (citing Kyle, 734 F.3d at 965). The court's statement that movant should listen to Mr. Heller's advice does not rise to the level of coercion sufficient to show a Rule 11 violation. The purpose of Rule 11 is to "keep the judge from shaping the plea bargain or persuading the defendant to accept particular terms, and to preserve judicial impartiality." United States v. Frank, 36 F.3d 898, 902 (9th Cir. 1994). The district court's statement that movant should listen

10

to counsel's advice does not amount to involvement in the agreement sufficient to show a Rule 11 violation. U.S. v. Hicks, 531 F.3d 49, 53 (1st Cir. 2008) (district court did not improperly participate in plea negotiations by telling defendant that his attorney's advice was "sound and good legal advice"). Accordingly, the court finds that movant should not be entitled to relief on his Rule 11 claim.

## II. Ineffective Assistance of Counsel

Movant claims that Mr. Heller rendered ineffective assistance of counsel based on (1) his failure to investigate, (2) his coercive actions during the change of plea hearing, and (3) his failure to file an appeal. The court will address each of these claims separately below.

The two-part Strickland test applies to ineffective assistance of counsel claims relating to the plea-negotiation process because under the Sixth Amendment criminal defendants are entitled to effective counsel during the plea-bargaining process. Missouri v. Frye, 566 U.S. 134, 144 (2012); Lafler v. Cooper, 566 U.S. 156, 162 (2012); Hill v. Lockhart, 474 U.S. 52, 57 (1985). Generally, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Frye, 566 U.S. at 145. Trial counsel also must adequately inform the defendant so that he has "the tools he needs to make an intelligent decision" regarding the plea offer. Turner v. Calderon, 281 F.3d 851, 881 (9th Cir. 2002).

Counsel's advice is deficient when it was "so incorrect and so insufficient that it undermined [the defendant's] ability to make an intelligent decision about whether to accept the [plea] offer." Id. at 880 (quoting United States v. Day, 969 F.2d 39, 43 (3rd Cir. 1992)). "[T]he question is not whether 'counsel's advice [was] right or wrong, but . . . whether that advice was within the range of competence demanded of attorneys in criminal cases.'" Turner, 281 F.3d at 880 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Counsel's ineffectiveness results from "gross error," not a failure to "accurately predict what the jury or court might find." Turner, 281 F.3d at 881. Counsel is not required to "discuss in detail the significance of a plea agreement," or "strongly recommend the acceptance or rejection of a plea offer." Id.

////

In order to show prejudice in the context of plea offers, "a defendant must show the outcome of the plea process would have been different with competent advice." Lafler, 566 U.S. at 163.

### A. Failure to Investigate

Movant argues Mr. Heller failed to investigate six witnesses who would corroborate movant's innocence. (ECF No. 47 at 25.) Movant states that he gave Mr. Heller information regarding these witnesses one year before his trial date and Heller told movant "this would be handled." Movant claims he realized at the pre-trial hearing that "the matter wasn't handled." However, Movant's allegation that he told Mr. Heller about the six witnesses well before the June 7 hearing, that allegation is not supported by the record. Mr. Heller stated at least twice that he learned about the six witnesses shortly before the hearing. (See ECF No. 45 at 7, 15.) Movant did not interject to correct Mr. Heller on either occasion.

Movant further claims that Heller had other evidence, such as "a file that would potentially clear [movant] of any wrongdoing, CD's with information on it showing that it wasn't [movant] whom the Government was asking about concerning the Fraud." (ECF No. 47 at 26.)

As the government points out in the motion to dismiss, movant's allegations regarding Mr. Heller's failure to investigate lack specificity. Movant has not provided the identities of the alleged witnesses and has not explained what information the "file" and "CDs" contained. Such speculative allegations do not warrant relief under section 2255. James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

Additionally, because movant has not indicated what information would have been obtained from the witnesses, file, and CDs he has not shown that he was prejudiced by Mr. Heller's failure to investigate. Lafler, 556 U.S. at 163 ("[A] defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

////

////

**B. Voluntariness of Plea**

Movant alleges Mr. Heller worked with the court to coerce him into pleading guilty. (ECF No. 47 at 26.) Movant points to the following statement from Mr. Heller:

> Your Honor, can I say something as well? I don't believe you are doing anything coercive. You've reiterated what I've told him, that we have a trial confirmation proceeding, which I helped -- I actually was the one that came up with that idea before you were born, I think.

(ECF No. 47 at 26; ECF No. 45 at 14) to show that Mr. Heller knew the court participated in the plea process because they both wanted movant to enter a guilty plea. Movant further claims that because Mr. Heller "allowed the conduct by the court to go uncorrected, he "imposed unreasonable constraints on [movant's] decisionmaking [sic] process, and that those constraints rendered his guilty plea involuntary." (ECF No. 47 at 27.)

Movant's allegation that Mr. Heller insisted that movant plead guilty despite his express desire to go to trial is contradicted by the record. Movant has not explained how Mr. Heller's statement that he did not believe the court had done anything coercive forced him to plead guilty. The court stressed multiple times that while movant needed to make *a* decision, movant could choose to plead guilty or go to trial. (See ECF No. 45 at 4:9, 5:8-9, 5:22-23, 6:15-16.) At the outset of the June 7, 2012, hearing, Mr. Heller stated that he was prepared to go to trial, but movant wanted a continuance. (ECF No. 45 at 3:16-17.) Thus, the court finds movant's claim that Mr. Heller insisted he plead guilty lacks credibility because it is contradicted by the record.

Movant further claims counsel failed to "properly" explain the charges, the law, the evidence the government could and could not produce, the likely sentencing range, and the advantages and disadvantages of entering a plea. (ECF No. 47 at 28.) However, this claim is also contradicted by the record. At the hearing June 7, 2012, hearing, movant confirmed that Mr. Heller had gone over the plea agreement with movant in detail. (ECF No. 45 at 4-5.) Movant confirmed under oath that he was fully satisfied with the advice and representation he received from Mr. Heller. (Id. 19.) Movant again acknowledged that Mr. Heller went over the plea offer with him at the August 9, 2022, evidentiary hearing.

////

"In assessing the voluntariness of the plea, statements made by a criminal defendant contemporaneously with his plea should be accorded great weigh" . . . and there is a "strong presumption" of truthfulness afforded to "solemn declarations made in open court." Chizen v. Hunter, 809 F.2d 560, 562 (9th Cir. 1986). Accordingly, the court finds movant is not entitled to relief on his claims that he was coerced into pleading guilty based on Mr. Heller's alleged insistence that he plead guilty, and that Mr. Heller failed to properly explain the advantages or disadvantages of entering a plea.

### C. Failure to File Notice of Appeal

Movant claims that Mr. Heller was ineffective because he failed to file a notice of appeal. (ECF No. 47 at 27.) Movant states that after he was sentenced, he asked Mr. Heller to file an appeal. Mr. Heller agreed and told movant he would file an appeal within fourteen days. (Id.) Movant waited to hear from Mr. Heller. Around July 2013, Mr. Heller told movant he was no longer movant's attorney, but stated that he would call the U.S. Attorney's office to see if they would appoint movant an attorney. Thereafter, movant called Heller and asked about the status. Heller told movant there was nothing he could do and hung up on movant. (Id.)

Along with their opposition to movant's § 2255 motion, the government submitted a sworn declaration from Mr. Heller stating that movant never instructed him to file an appeal. (Heller Decl. at 2:17-18.) The government requested an evidentiary hearing to resolve this disputed issue of fact. (ECF No. 70 at 2-3.)

By order dated November 18, 2021, the undersigned granted the parties' request for an evidentiary hearing related to movant's allegation that Mr. Heller failed to file a notice of appeal. (ECF No. 73.) The evidentiary hearing was initially set for May 3, 2022. (ECF No. 81.) However, it was continued several times due to the parties' preference to conduct the hearing in person, rather than via Zoom, and in light of Mr. Heller's health concerns amid the ongoing COVID-19 pandemic. (ECF Nos. 83, 90, 95.) Before the evidentiary hearing was conducted, Mr. Heller passed away. At the evidentiary hearing, movant was the only witness. Due to Mr. Heller's unavailability, the government sought to introduce exhibits containing correspondence from Mr. Heller to movant. (ECF No. 97, 99.) At the hearing, the undersigned provisionally

1    admitted the documents, but deferred ruling on whether the exhibits would be admitted into

2    evidence.  (ECF No. 99.)

3          Following the evidentiary hearing, the undersigned gave the parties the opportunity to file

4    post-hearing supplemental briefs.  (ECF No. 100.)  The government filed a supplemental brief.

5    (ECF No. 102.)  Therein, the government argued that the letters should be admitted based on

6    Federal Rule of Evidence 807.  Movant did not file a supplemental brief or respond to the

7    government's supplemental brief.

8          The Ninth Circuit explained in United States v. Sandoval-Lopez, 409 F.3d 1193 (9th Cir.

9    2005) that if a defendant requests that counsel file an appeal, and the attorney refuses to file an

10   appeal, the refusal itself amounts to ineffective assistance of counsel. Id. at 1197 ("it is

11   ineffective assistance of counsel to refuse to file a notice of appeal when your client tells you to,

12   even if doing so would be contrary to the plea agreement and harmful to your client.").  "This is

13   true even if the defendant waived the right to appeal, does not have a non-frivolous ground for a

14   direct appeal, and the appellant may spend more time in prison that she would if she had not

15   appealed." United States v. Lamere, 333 Fed.Appx. 336, 337 (9th Cir. 2009).  However, a "bare

16   assertion by the [movant] that [he or she] made a request is not by itself sufficient to support a

17   grant of relief, if evidence that the fact-finder finds to be more credible indicates the contrary

18   proposition." Green v. United States, 323 F.3d 1100, 1103 (8th Cir. 2003) (quoting Barger v.

19   United States, 204 F.3d 1180, 1182 (8th Cir. 2000)).

20         In his § 2255 motion and at the hearing, movant offered only his own self-serving

21   statements in support of his claim that he asked Mr. Heller to file an appeal.  "[S]elf-serving

22   allegations by a habeas petitioner, without more, are not sufficient to establish entitlement to

23   relief." U.S. v. Moss, No. 2:03-cr-0550 WBS DAD P, 2015 WL 251890 at *10 (E.D. Cal. Jan.

24   20, 2015); see also Womack v. Del Papa, 497 F.3d 998, 1004 (9th Cir. 2007) (rejecting an

25   ineffective assistance of counsel claim where the only evidence in support of the claim was

26   petitioner's own self-serving statement and the statement was contradicted by petitioner's

27   statement in the plea agreement); Dows v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (denying

28   petitioner's ineffective assistance of counsel claim because there was no evidence in the record,

other than petitioner's self-serving affidavit, to support his ineffective assistance of counsel claim); Underwood v. Clark, 939 F.2d 473, 476 (7th Cir. 1991) ("[I]n a subsequent collateral attack on the conviction the defendant must produce something more than a bare, unsubstantiated, thoroughly self-serving . . . statement."); Elizey v. United States, 210 F.Supp.2d 1046, 1051 (C.D. Ill. 2002) (rejecting claim that trial counsel failed to advise petitioner to accept a plea where the only evidence in support was petitioner's own self-serving affidavit and record facts contradicted petitioner's affidavit); Jacobo v. U.S., Nos. C0-4035-MWB, CR05-4031-MWB, 2009 WL 2751010 at *5 (N.D. Iowa Aug. 26, 2009) (holding bare assertion that movant asked counsel to file an appeal, compared with counsel's conflicting testimony via affidavit, was insufficient to show deficient performance).

Additionally, at the hearing the undersigned did not find movant's testimony to be credible. "The judge at a hearing on a motion to vacate is entitled to determine what version of the facts presented is most credible." Nupdal v. U.S., 666 F.3d 1074, 1076 (8th Cir. 2012) (citing Rodriguez v. United States, 964 F.2d 840, 842 (8th Cir. 1992)). Based on the undersigned's findings regarding movant's credibility and because the only evidence in support of movant's account of events are his own self-serving statements, the undersigned will recommend that his claim that Mr. Heller was ineffective for failing to file an appeal be denied.

Because the undersigned has determined that movant has failed to show deficient performance the court need not determine if he was prejudiced by such action. See Strickland, 466 U.S. 697 (an ineffective assistance of counsel claim should be denied if movant fails to make a sufficient showing under either of the Strickland prongs).

////
////
////
////
////
////
////

**CONCLUSION**

For the reasons set forth above IT IS HEREBY RECOMMENDED that:

1. Movant's motion to vacate, set aside or correct his sentence (ECF No. 47) be denied; and

2. The Clerk of Court be directed to close the companion civil case No. 2:13-cv-2555 DAD DB.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, they shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3).  Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  December 27, 2022

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DB:12
DB/DB Prisoner Inbox/Habeas/S/brow0249.fr 2255_10.28